## CALDWELL v. NORTH CAROLINA.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 54.  Argued October 22, 1902.—Decided January 12, 1903.

An ordinance passed by the board of aldermen of the city of Greensboro, North Carolina, in pursuance of powers conferred by the legislature of the State, that every person engaged in the business of selling or delivering picture frames, pictures, photographs or likenesses of the human face in the city of Greensboro, whether an order for the same shall have been previously taken or not, shall pay a license tax of ten dollars for each year, is an attempt to interfere with, and to regulate commerce, and as such is invalid as to an agent of a corporation residing out of the State.

Where a portrait company, carrying on business in one State obtains orders through an agent in another State for pictures and frames, the fact that in filling the orders it ships the pictures and frames in separate packages, for convenience in packing and handling, to its own agent, who places the pictures in their proper places or frames and delivers them to the persons ordering them, does not deprive the transaction of its character of interstate commerce or take it out of the salutary protection of the commerce clause of the Federal Constitution.

At June term, 1900, of the Superior Court of Guilford County, State of North Carolina, E. M. Caldwell was tried before a court and jury for an alleged offence in having engaged in the business of delivering pictures without having first obtained a license so to do.  The jury found a special verdict as follows:

"The business mentioned in the ordinance following is not named in the charter of the city, other than in the above section.

"That the following is an ordinance duly passed by the board of aldermen of the city of Greensboro under and by virtue of the foregoing section of said charter, and prior to any of the orders being taken:

"'Be it ordained by the board of aldermen of the city of Greensboro, North Carolina:

"'That every person engaged in the business of selling or delivering picture frames, pictures, photographs or likenesses of the human face, in the city of Greensboro, whether an order

for the same shall have been previously taken or not, unless the said business is carried on by the same person in connection with some other business for which a license has already been paid to the city, shall pay a license tax of ten dollars for each year.

"' Any person engaging in said business without having paid the license tax required herein, shall be fined twenty dollars, and each and every sale or delivery shall constitute a separate and distinct offence.'

" That neither the defendant, The Chicago Portrait Company, nor any of the employés of the Chicago Portrait Company, have paid the city any license tax.

" If, upon the foregoing facts, the court shall be of opinion that the defendant is guilty, the jury say that he is guilty ; otherwise they say that he is not guilty.

" That on the — day of ———, 1900, the defendant, being employed by the Chicago Portrait Company, a foreign corporation, of Chicago, Ill., came to Greensboro for the purpose of delivering certain pictures and frames for which contracts of sale had previously been made by other employés of the Chicago Portrait Company, who had preceded the defendant in Greensboro ;

" That the defendant went to the Southern Railway freight station and took therefrom large packages of pictures and frames which had been shipped to Greensboro, N. C., addressed to the Chicago Portrait Company, carried these packages to the rooms of the defendant in the Woods House, a hotel in the city of Greensboro, and there broke the bulk, placing said pictures in their proper frames and from this point delivered the pictures one at a time to the purchasers in the city of Greensboro ;

" The defendant had been engaged in this work two days when arrested ;

" That section 57 of the charter of the city of Greensboro, N. C., is as follows :

"' That in addition to the subjects listed for taxation, the aldermen may levy a tax on the following subjects, the amount of which taxed, when fixed, shall be collected by the collector of taxes, and if it be not paid on demand, the same may be re-

covered by suit, or the articles upon which the tax is imposed, or any other property of the owner may be forthwith distrained and sold to satisfy the same, namely :

"'21. Upon all subjects taxed under Schedule B, chapter one hundred and thirty-six, Laws of North Carolina, session of one thousand eight hundred and eighty-three, not heretofore provided for, shall pay a license or privilege tax of ten dollars. And the board of aldermen shall have power to impose a license tax on any business carried on in the city of Greensboro, not before enumerated herein, not to exceed ten dollars a year.'"

Upon this special verdict the court adjudged that defendant was guilty, and sentenced him to pay a fine of twenty dollars and costs of the action. From this judgment the defendant appealed to the Supreme Court of North Carolina. That court, Faircloth, C. J., and Clark, J., dissenting, on February 19, 1901, affirmed the judgment of the Superior Court, 127 N. C. 521; and thereupon the cause was brought to this court by a writ of error allowed by the Chief Justice of the Supreme Court of North Carolina.

*Mr. Charles M. Stedman* for plaintiff in error. *Mr. W. R. Plum* was with him on the brief.

*Mr. Alfred M. Scales* for defendant in error.

MR. JUSTICE SHIRAS, after making the foregoing statement, delivered the opinion of the court.

It might fairly be contended that, upon the facts found by the special verdict, the defendant was not guilty of engaging in the business of delivering pictures without a license, within the purview of the ordinance in question. But as the Supreme Court of North Carolina has held otherwise we must accept that conclusion as a question of construction belonging to that court. Our task is to determine whether the ordinance, as so construed, is invalid as an attempt to interfere with and to regulate interstate commerce, and can be speedily performed, for

we think the case falls within previous decisions of this court on this subject.

Such decisions are numerous, but we do not deem it necessary to refer to but a few of them.

The subject was elaborately considered in *Robbins* v. *Shelby Taxing District*, 120 U. S. 489.   The case was brought here on a writ of error to the Supreme Court of Tennessee, which had held valid a statute of that State, by which it was enacted that "all drummers and all persons not having a regular licensed house of business in the taxing district, offering for sale or sell- ing goods, wares, or merchandise therein by sample, shall be required to pay to the county trustee the sum of $10 per week, or $25 per month, for such privilege, and no license shall be issued for a longer period than three months."   Robbins, the plaintiff in error, was a citizen and resident of the city of Cin- cinnati, Ohio, and was convicted of having offered for sale ar- ticles of merchandise belonging to a firm in Cincinnati without having procured a license.   In his discussion of the case Mr. Justice Bradley stated the following principles, as already es- tablished by this court : The Constitution of the United States, having given to Congress the power to regulate commerce, not only with foreign nations, but among the several States, that power is necessarily exclusive whenever the subjects of it are national in their character, or admit only of one uniform sys- tem or plan of regulation ; that where the power of Congress to regulate is exclusive, the failure of Congress to make express regulations indicates its will that the subject shall be left free from any restrictions or impositions, and any regulation of the subject by the States, except in matters of local concern only, is repugnant to such freedom ; that the only way in which com- merce between the States can be legitimately affected by state laws is when, by virtue of its police power, and its jurisdiction over persons and property within its limits, a State provides for the security of the lives, health and comfort of persons and the protection of property, and imposes taxes upon persons re- siding within the State or belonging to its population, and upon vocations and employments pursued therein, not directly con- nected with foreign or interstate commerce, or with some other

employment or business exercised under authority of the Constitution and laws of the United States ; and imposes taxes upon all property within the State, mingled with and forming part of the great mass of property therein ; but that, in making such internal regulations, a State cannot impose taxes upon persons passing through the State, or coming into it merely for a temporary purpose, especially if connected with interstate or foreign commerce ; nor can it impose such taxes upon property imported into the State from abroad, or from another State, and not become part of the common mass of property therein ; and no discrimination can be made, by such regulations, adversely to the persons or property of other States ; and no regulations can be made directly affecting interstate commerce.

Upon these established principles the conclusion was reached that the state statute in question was invalid, and the following observations are pertinent to the question before us :

" It would not be difficult, however, to show that the tax authorized by the State of Tennessee in the present case is discriminative against the merchants and manufacturers of other States. They can only sell their goods in Memphis by the employment of drummers and by means of samples ; whilst the merchants and manufacturers of Memphis, having regular licensed houses of business there, have no occasion for such agents, and, if they had, they are not subject to any tax therefor. They are taxed for their licensed houses, it is true ; but so, it is presumable, are the merchants and manufacturers of other States in the places where they reside ; and the tax on drummers operates greatly to their disadvantage in comparison with the merchants and manufacturers of Memphis. And such undoubtedly was one of its objects. This kind of taxation is usually imposed at the instance and solicitation of domestic dealers, as a means of protecting them from foreign competition. And in many cases there may be some reason in their desire for such protection. But this shows in a still stronger light the unconstitutionality of the tax. It shows that it not only operates as a restriction upon interstate commerce, but that it is intended to have that effect as one of its principal objects. And if a State can, in this way, impose restrictions upon interstate commerce for the benefit and

protection of its own citizens we are brought back to the condition of things which existed before the adoption of the Constitution, and which was one of the principal causes which led to it.

"If the selling of goods by sample and the employment of drummers for that purpose, injuriously affect the local interest of the States, Congress, if applied to, will undoubtedly make such reasonable regulations as the case may demand. And Congress alone can do it; for it is obvious that such regulations should be based on a uniform system applicable to the whole country, and not left to the varied, discordant, or retaliatory enactments of forty different States. The confusion into which the commerce of the country would be thrown by being subject to state legislation on this subject, would be but a repetition of the disorder which prevailed under the Articles of Confederation."

*Asher* v. *Texas*, 128 U. S. 129, was a case where a state statute required from "every commercial traveler, drummer, salesman, or solicitor of trade, by sample or otherwise, an annual occupation tax," and such legislation was declared inoperative, so far as it affected one soliciting orders for a business house in another State. The same doctrine was held in *Stoutenburgh* v. *Hennick*, 129 U. S. 141, in the case of an agent of a Maryland business house soliciting orders in the District of Columbia without having taken out a license as required by an act of the legislative assembly, of the District of Columbia.

In *Lyng* v. *Michigan*, 135 U. S. 161, the general proposition was repeated:

"We have repeatedly held that no State has the right to lay a tax on interstate commerce in any form, whether by way of duties laid on the transportation of the subjects of that commerce, or on the receipts derived from that transportation, or on the occupation or business of carrying it on, for the reason that such taxation is a burden on that commerce, and amounts to a regulation of it, which belongs solely to Congress."

In *Crutcher* v. *Kentucky*, 141 U. S. 47, an act of the State of Kentucky, which forbade the agent of an express company, not incorporated by the laws of that State, from carrying on busi-

ness without first obtaining a license from the State, was held to be a regulation of commerce and invalid. Mr. Justice Bradley, speaking for the court, said :

"The character of police regulation, claimed for the requirements of the statute in question, is certainly not such as to give them a controlling force over the regulations of interstate commerce which may have been expressly or impliedly adopted by Congress, or such as to exempt them from nullity when repugnant to the exclusive power given to Congress in relation to that commerce. This is abundantly shown by the decisions to which we have already referred, which are clear to the effect that neither licenses nor indirect taxation of any kind, nor any system of state regulation, can be imposed upon interstate any more than upon foreign commerce; and that all acts of legislation producing any such result are, to that extent, unconstitutional and void."

In *Brennan* v. *Titusville*, 153 U. S. 289, was again presented the question of the validity of an ordinance providing "That all persons canvassing or soliciting, within the city of Titusville, orders for goods, books, paintings, wares or merchandise of any kind, or persons delivering such articles under orders so obtained or solicited, shall be required to procure from the mayor a license to transact said business, and shall pay to the treasurer therefor certain sums, according to the time for which said licenses shall be granted," and also prescribing a penalty for failing to procure such license. An agreed statement of facts showed that Shepard was a manufacturer of picture frames and maker of portraits, residing in Chicago in the State of Illinois, of which State he was a citizen, and in which State he had his manufactory and place of business; that in the prosecution of his business he employed agents, who, under his directions, solicited orders for pictures and picture frames in the State of Pennsylvania and in other States of the Union, by going personally to residents and citizens of said State of Pennsylvania and other States, and exhibiting samples of his pictures and frames, going, when necessary, from house to house; that Brennan was an agent of the said Shepard, employed by him to travel and solicit orders for pictures and

frames, upon a salary; that upon receiving orders for pictures and picture frames, the agents of Shepard forwarded the same to him at Chicago, where the goods were made, and from there shipped to the purchasers in Titusville by railroad freight and express, and the price of said goods was collected and forwarded by the express companies and sometimes by the agents to said Shepard at Chicago; that Brennan, the agent employed by Shepard, was engaged in conducting the business in the manner stated, at the time of his arrest, and acting solely for Shepard.

Upon such a state of facts, and upon a review of the cases, this court held it was not bound by the decision of the highest court of the State in which such a tax was authorized and imposed that such a tax was an exercise of the police power, and not of the taxing power; and that the ordinance in question imposed a tax upon interstate commerce, and was therefore void. To the argument that no discrimination was made in the ordinance between domestic and foreign drummers, the court said:

"It is strongly urged, as if it were a material point in the case, that no discrimination is made between domestic and foreign drummers—those of Tennessee and those of other States; that all are taxed alike. But that does not meet the difficulty. Interstate commerce cannot be taxed at all, even though the same amount of tax should be laid on domestic commerce, or that which is carried on solely within the State. This was decided in the case of *The State Freight Tax*, 15 Wall. 232. The negotiation of sales of goods which are in another State, for the purpose of introducing them into the State in which the negotiation is made, is interstate commerce. A New Orleans merchant cannot be taxed there for ordering goods from London or New York, because, in the one case, it is an act of foreign, and in the other of interstate commerce, both of which are subject to regulation by Congress alone."

The last case we shall cite is the recent one of *Stockard* v. *Morgan*, 185 U. S. 27, where was considered the validity of a statute of the State of Tennessee providing for the collection of a privilege tax on the occupation of merchandise brokers.

By agreement of the parties two questions only were argued in the state court: (1) whether or not the complainants, who had filed a bill to restrain the collection of the tax, were merchandise brokers and subject by the statute to tax as such; (2) whether or not their business constituted interstate commerce, and therefore was beyond the reach of the State's taxing power. The state Supreme Court held that the complainants, as merchandise brokers, were within the meaning of the statute, and that the tax was a valid one under the Constitution of the United States.

This court, though recognizing that it was obliged to accept the construction put upon the statute by the state court, reversed the judgment of that court in respect to the nature of the commerce as interstate. In the opinion of the court, delivered by Mr. Justice Peckham, the principal cases, beginning with *Brown* v. *Maryland,* 12 Wheat. 419, and ending with *Brennan* v. *Titusville,* were again reviewed, and the conclusions there reached were affirmed.

The state Supreme Court endeavored to distinguish the present case from that of *Brennan* v. *Titusville,* in the following observations:

" The defendant insists that *Brennan* v. *Titusville* is directly in point—is, in every essential fact, this case—and should control the opinion of the court on this appeal. And it is in many respects like this case, but there is one material difference between that case and this, which marks the distinction. In that case, the goods were shipped directly to the purchaser. In this case, they were shipped by the Chicago company to itself in the city of Greensboro; and when they reached Greensboro, the defendant as the agent of the Chicago company received them from the railroad at its depot, carried them to its room in Greensboro, opened the boxes in which they were shipped, took out the pictures and picture frames, assorted them and put them together, and delivered them to the purchasers in the city of Greensboro, and had been engaged in this work two days when arrested. If they had been completed and shipped directly to the parties for whom they were intended, this case would have fallen within the decision of *Brennan* v. *Titusville,* and we

should hold, as it was held there, that it was an interference with interstate commerce, and that the defendant was not guilty. But to our minds there is a decided difference between this case and that. The contract to make and deliver these pictures was an executory contract, and no title passed by this contract. If they had been completed in Chicago, and under contract shipped to the purchaser, the title would have passed to the consignee upon delivery to the railroad in Chicago—the railroad being deemed to be the agent of the consignee, and *Brennan* v. *Titusville* would have applied, as the tax would have been upon the commerce. But, instead of completing the pictures in Chicago and shipping them to the parties who had contracted for them, they were shipped to themselves, ' The Chicago Portrait Company,' in Greensboro. This being so no title ever passed from the Chicago Portrait Company, until the pictures were put in the frames and delivered by the defendant. These pictures belonged to the Chicago company when they were shipped from Chicago, and belonged to it when they got to Greensboro. And the question is, could the Chicago Portrait Company, because it was a foreign corporation, engage in the business of completing these pictures, and in selling and delivering them in Greensboro, without becoming liable to a city tax, for which its own citizens would be liable. It seems to us that it could not."

We are not persuaded by this reasoning. It seems to proceed upon two propositions—first, that the pictures in question were not completed before they were brought to Greensboro; and, second, that the articles were not shipped directly to the purchasers, but to an agent of the sender in Greensboro.

But it certainly cannot be pretended that, if the pictures and the disconnected frames had been directly shipped to the purchasers, the license tax could have been imposed, either on the vendor out of the State or on the purchaser within the State. If the pictures and the frames intended for them had been shipped directly to the purchasers, whether in the same or separate packages, such a transaction would, beyond question, be interstate commerce beyond the reach of the taxing power of the State. It is too plain for argument that the supposed in-

complete condition of articles of commerce, if shipped directly to the purchasers, cannot subject them to the license tax.

But we are not disposed to concede that, under the facts of this case, the pictures were, in any proper sense, incomplete when received in Greensboro. That the frames and the pictures were in separate packages, if such was the case, was merely for convenience in packing and handling, and " placing the pictures in their proper places," (the language of the verdict,) meant that each picture was placed in the frame designed for it. The selection of the frame was as much a part of the purchase and sale as the selection of the picture.

Nor does the fact that these articles were not shipped separately and directly to each individual purchaser, but were sent to an agent of the vendor at Greensboro, who delivered them to the purchasers, deprive the transaction of its character as interstate commerce. It was only that the vendor used two instead of one agency in the delivery. It would seem evident that, if the vendor had sent the articles by an express company, which should collect on delivery, such a mode of delivery would not have subjected the transaction to state taxation. The same could be said if the vendor himself, or by a personal agent, had carried and delivered the goods to the purchaser. That the articles were sent as freight by rail and were received at the railroad station by an agent who delivered them to the respective purchasers, in nowise changes the character of the commerce as interstate.

Transactions between manufacturing companies in one State, through agents, with citizens of another constitute a large part of interstate commerce; and for us to hold, with the court below, that the same articles, if sent by rail directly to the purchaser, are free from state taxation, but if sent to an agent to deliver, are taxable through a license tax upon the agent, would evidently take a considerable portion of such traffic out of the salutary protection of the interstate commerce clause of the Constitution.

It cannot escape observation that efforts to control commerce of this kind, in the interest of the States where the purchasers reside, have been frequently made in the form of statutes and

municipal ordinances, but that such efforts have been heretofore rendered fruitless by the supervising action of this court.    The cases hereinbefore cited disclose the truth of this observation.

Upon principle and authority, therefore, we conclude that the judgment of the Supreme Court of North Carolina should be and is

*Reversed, and the cause is remanded to that court to take further proceedings not inconsistent with this opinion.*