CASE ·16.—ACTION BY THE STEWART IRON WORKS COMPANY AGAINST JAMES, AUDITOR.—April 26, 1910.

## Stewart Iron Works Co. v. James, Auditor.

Appeal from Warren Circuit Court.

McKENZIE Moss, Circuit Judge.

Judgment for defendant and plaintiff appeals.— Affirmed.

Licenses—Corporations—Business Done in the State.—Ky. St: section 4189a, provides that all corporations having capital stock divided into shares, except foreign insurance companies, etc., shall pay an annual license tax based on its authorized capital stock, as hereinafter provided. Section 4189b (section 6067) provides that, for convenience in classification, corporations are divided into two classes, domestic and foreign, etc. Section 4189c (section 6068) provides that domestic and foreign corporations shall pay an annual license tax of 30 cents on each $1,000 of .that part of their authorized captial stock represented by property owned and business transacted in the state, etc. Held, that where a domestic corporation employed agents to sell its products, the agents to receive as compensation for their services whatever they could obtain above the prices furnished by the corporation, the sales made by them in other states constituted business done in this state, and that such business was liable to taxation under said sections.

M. H. McLEAN for appellant.

JAS. BREATHITT attorney general, JNO. F. LOCKETT assisant attorney general for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE BARKER—
Affirming.

The appellant, the Stewart Iron Works Company,
seeks in this litigation to enjoin the appellee, Frank
P. James, the Auditor of the State, from enforcing
the payment from it of a license tax for the year
1909. Appellant is a Kentucky corporation, with a
capital stock of $200,000, and its business place is in
Kenton county, Ky. For the year in question the
gross amount of business done by it was $600,000.
The gross income from business done and sales made
by it in the state of Kentucky it claims to have been
only $30,000. Its tangible property in this state it
values at $25,000. The business of the corporation
is in the manufacture and sale of iron fencing, iron
lawn furniture, etc. Appellant does not claim that
it should not pay some license tax to the common-
wealth, but it insists that the gross amount of its
sales for the year under discussion should not be
taken into consideration in estimating the amount of
its license, but only sales made within the state should
be considered. On the other hand, the Auditor claims
that all of the sales made by the appellant is busi-
ness done in this state within the meaning of the
statutes regulating the tax in question.

The statute regulating the subject in hand is con-
tained within the following sections of the Kentucky
Statutes:

"Sec. 4189a. All corporations having capital stock
divided into shares, organized by or under the laws
of this or any other state or government owning
property or doing business in this state, except for-
eign insurance companies, whether fire, life, accident,
casualty or indemnity, foreign or domestic building
and loan associations, banks and trust companies,

and all corporations which, under this act or the general law, are liable to pay a franchise or license tax, shall pay to this state an annual license tax based upon its authorized capital stock, as hereinafter provided.

"Sec. 4189b. For convenience in classification, corporations are divided into two classes, domestic and foreign. A domestic corporation is one incorporated by and under the laws of this state; every other corporation is a foreign corporation.

"Sec. 4189c. Domestic and foreign corporations shall pay an annual license tax of thirty cents on each one thousand dollars of that part of their authorized capital stock represented by property owned and business transacted in this state, which shall be ascertained by finding the proportion that the property owned and business transacted in this state bears to the aggregate amount of property owned and business transacted in and out of this state."

The manner in which appellant conducted its business is fully shown in the following excerpt from its petition: "Plaintiff says that, at all times mentioned herein, it was engaged in the business of manufacturing iron fence, lawn furniture, etc.; that for the purpose of carrying on its business and in the prosecution thereof, there was established, at the time said report was made, and for a year prior thereto, a great number of agents throughout the states of the United States; that said agents were located in and residents of the several states in which they were engaged in the sale of said iron fence, lawn furniture, etc., on behalf of plaintiff; that under the contract of agency existing between them and the said Stewart Iron Works Company, they were furnished with catalogues, price lists, etc., and that they sold

the iron fence, lawn furniture, etc., for plaintiff according to said catalogues; that said agents fixed the price on all sales made by them at such figures as they deemed fit and proper above the price quoted them by plaintiff in its catalogues and price lists; that the margin at which they sold plaintiff's iron fence and lawn furniture above said catalogues and price lists was the profit accruing to said agents upon the sales made by them. Plaintiff says that it did not control the price said agents made sales on of said iron fence and lawn furniture, and other products manufactured by it, other than as herein stated. Plaintiff says that, when said agents under their contract with the plaintiff would make sales of its products to the individuals in different states, they would have executed a written contract covering the terms thereof, together with a description of the product to be made by plaintiff, and would forward said contract, or a copy thereof, to plaintiff at Covington, Ky., who would in said town manufacture said iron fence and lawn furniture according to the terms of said contract, and would ship the same to the agent making the contract, or according to his direction; that the said agents were in most cases authorized and directed to collect the sums due on contracts, and were required so to do under their agreement with plaintiff, if plaintiff should look to them to perform said services; that upon collections made by said agents they remitted to plaintiff the price quoted by plaintiff in its catalogues and price lists; said agents retaining the balance of said contract price as their profit for making said sales."

The question for adjudication is whether or not the gross amount of business done by appellant corporation for the year 1909 is to be considered as busi-

ness done by it in the state of Kentucky within the meaning of the statutes above set out, or, must the Auditor, in estimating the license tax, confine his consideration to the amount of sales made to parties residing within the state of Kentucky? The question, then, finally comes to this: Are the sales of manufactured goods made, as set forth in appellant's petition, to persons residing in another state, business done in the state where the purchaser resides, or in that in which the articles are manufactured? It is not pretended that appellant has any part of its capital invested in the manufacture of the wares it sells in any other state than Kentucky; nor does it keep a warehouse or storeroom outside of Kentucky, from which to make such sales or deliver such goods. It sends its agents throughout the country, with catalogues of the articles it manufactures, and furnishes to the agents the prices at which it is willing to part with its manufactured goods; and, as a commission, each agent is authorized to sell the articles for as much above appellant's prices as he can get, and the difference between appellant's selling price and the price the agent can obtain represents his commission for the sale. When the contract for a sale is made, it is reduced to writing by the agent and sent to the appellant at Covington, Ky., where the various articles covered by the contract are manufactured, and either sent to the agent to be delivered to the customer, or sent direct to the customer, as the agent may designate. In some instances the whole price is collected by the agent, who retains his commission and forwards the remainder to appellant in Kentucky. It seems to us to require no argument to show that $600,000 worth of property manufactured and sold constitutes business done somewhere, and

that this business must be considered as done, either in the state where the articles are delivered to the purchaser, or in the state where they are manufactured; and it also seems plain that all business of the nature of that under consideration may be taxed somewhere. It cannot be that it is to escape taxation altogether. We will first consider whether or not it is business done in the state (other than Kentucky) where the purchaser resides.

For illustration we will suppose that one of the agents of appellant sells to a citizen of Ohio $10,000 worth of the merchandise manufactured by it; that the contract is remitted to appellant's place of business in Kentucky; the articles manufactured and shipped to the purchaser in Ohio; the money collected by the agent; his commission retained, and the remainder forwarded to the manufacturer. Is this business done in Kentucky or in Ohio? If it is business done in Ohio, then Ohio could tax it, for it would be interstate commerce; but if it is business done in Kentucky, Ohio could not tax it, because then it would be interstate commerce. Now, let us suppose the fiscal authorities of Ohio should undertake to tax this transaction, either by requiring a license of the agent, or by requiring the vendor to pay a license, or by any other mode of taxation. The defense undoubtedly would be made that Ohio could not tax this property, directly or indirectly, because it was interstate commerce and protected by the Constitution of the United States from local taxation. The very question we have here arose in Caldwell v. North Carolina, 187 U. S. 624, 23 Sup. Ct. 229, 47 L. Ed. 336. In that case the Chicago Portrait Company was a corporation domiciled in Chicago, Ill. It was engaged in the business of making portraits of

persons from photographs. It sent its agents
throughout the United States soliciting business.
These agents would make contracts with persons de-
siring portraits; the purchaser would furnish the
agent a photograph of himself, and these were sent
to the company in Chicago, where the enlarged por-
trait was then made, and this, with a suitable frame
shipped to the agent in the state where the purchaser
resided; the agent would frame the portrait; deliver
it to the purchaser, collect the money due to the com-
pany, and forward it to its domicile in Chicago. The
city of Greensboro, N. C., undertook to enforce a
license tax from one of the agents of the portrait
company for carrying on the business, as above set
forth, without a license. The right to exact this li-
cense was upheld by the court of last resort of North
Carolina, but upon writ of error the Supreme Court
of the United States held that this was interstate
commerce, and not taxable, either directly or indi-
rectly, by the city of Greensboro. We do not feel
that it is necessary to analyze the opinion of the
Supreme Court of the United States delivered in the
case cited. The principle there enunciated cannot be
distinguished from that involved in the sales by ap-
pellant to its nonresident customers. The supposed
transaction could not be taxed, either by the state
of Ohio or by any of its subordinate governmental
subdivisions, for the reason that it constituted inter-
state commerce. Our court followed the Supreme
Court in the case of Commonwealth v. Baldwin, 96
S. W. 914, 29 Ky. Law Rep. 1074. In that case the
commonwealth sought to enforce a license tax on a
picture agent doing business in this state in precisely
the same way that the agent was doing business in
Greensboro, N. C., in the case above cited. Our

court, in the opinion rendered, contented itself with citing the language of the Supreme Court, and affirmed the judgment of the circuit court, which had dismissed the indictment against the agent.

As the business done by appellant in the manner shown in its petition cannot be taxed in the states (other than Kentucky) where the purchasers reside, it must follow that it is taxable in Kentucky, unless we are to reach the conclusion that such business cannot be taxed anywhere. We are therefore of opinion that such business is business done in the state of Kentucky within the meaning of the statute imposing the license tax. The object of the Legislature in enacting the statute was to impose a license tax on corporations doing business in this state, and in so doing only to tax once the business done. So it was provided that business done out of the state of Kentucky was not to be considered in estimating the amount of the license tax to be paid. Therefore, if a domestic corporation had a branch place of business in another state, the business done there, and which could be taxed by the foreign state, was not to be considered in estimating the license tax due the state of Kentucky. And in the same manner all property situated in a foreign state was to be considered in estimating the license tax. This shows without question that the Legislature intended that all business done by the corporation was to be taxed once, but no more. The fact that the customer who purchased the property resides in another state does not constitute business done out of Kentucky. The goods were manufactured in Kentucky, and in contemplation of law the sale took place in Kentucky, for the contracts were sent to Kentucky for approval and fulfillment, after the orders were taken by the

agent in the foreign state. If appellant's position were sound, then, if a person residing in another state were to purchase the whole output of a Kentucky corporation, that corporation would pay no license tax at all. This position cannot be sound.

The judgment dismissing appellant's (plaintiff below) petition is affirmed.