## MUSSER v. GROSJEAN et al.
### No. 591.

District Court, W. D. Louisiana, Shreveport Division.

May 25, 1934.

Blanchard & Pyburn, of Shreveport, La., for plaintiff.

Peyton R. Sandoz, of Baton Rouge, La., and R. J. O'Neal, of Shreveport, La., for defendants.

DAWKINS, District Judge.

Plaintiff alleges that he is engaged in the wholesale tobacco business, under the name of the Texas Tobacco Company, at Ardmore, Okl., and sells exclusively in interstate commerce; that he had shipped principally into the state of Texas until shortly before this suit was filed, when he started to do business in Louisiana; that the defendant Grosjean and her agents, charged with the duty of collecting certain taxes, seized a lot of cigarettes shipped into this state for delivery to customers, as well as an automobile belonging to one of plaintiff's employees, on the ground that a sales or excise tax of 4 cents per package on cigarettes imposed by the state had not been paid. He contends that his said business is solely interstate and not subject to the tax.

Defendant denies that plaintiff is engaged in interstate commerce, and avers that the method used amounts to nothing more than peddling.

I find the facts as follows:

Plaintiff conceived the idea that by selling the cigarettes in the manner adopted he could avoid paying sales taxes imposed by certain states, and be able to deliver them to consumers at prices much below those which would have to be charged by local dealers compelled to pay the tax (in this state 4 cents per package, or 40 cents per carton of ten packages). It is admitted that the principal thing which induced him to go into the business was his belief that the tax could be escaped. He had business cards printed representing himself as a dealer in "No Tax Cigarettes."

Plaintiff resides in Fort Worth, Tex., but rented a space about 29' x 22' in a building in Ardmore, Okl., used by the Johnson Motor Lines, for its business, and the cigarettes are invoiced and shipped to him there by the manufacturers or jobbers. He keeps one man in charge at that place. He had been doing business in Texas about three years at the time of this suit, but had just commenced here, and his first shipment into the

state was seized. Before starting, he came to Shreveport, saw the regularly retained attorney for the defendant, as well as one of her assistants, and informed them of his purpose to begin business in this state. He engaged one Homer Lawson, a clerk in a local clothing store in Shreveport, who was to represent plaintiff as a side line. This individual and his sister, a Mrs. Beth Trammel, proceeded to call upon several persons in the city of Shreveport and to obtain verbal orders from them for cigarettes, ranging from one to six cartons. Nothing was signed by the purchasers, but the said agents simply wrote down on an order blank the names of the customers and their addresses, rather incompletely but in sufficient manner, as they testified, to permit them to identify and locate the purchasers when delivering the cigarettes. The original of this slip or order was sent to the Texas Tobacco Company (plaintiff) at Ardmore, Okl., where an employee of plaintiff selected the brand or brands called for; then the name of the customer and his address, as best it could be made out from the rather imperfect writing on the order, were written on a slip or sticker and pasted on the carton containing ten packages of cigarettes. If there were more than one carton, a string was tied around the bundle and the sticker placed upon one of the cartons. All of these separate bundles were then placed in a pasteboard box, usually one in which cigarettes had been received from the jobber or manufacturer, and this box, with others, including similar ones intended for customers in Texas, was transported by the plaintiff's truck to Fort Worth, Tex., where the boxes going to Louisiana were forwarded by express to the said Homer Lawson at his residence address in Shreveport. When they were received, Lawson opened the box, took the separate cartons or bundles of cartons, as the case might be, out, and then he or his sister would deliver them to the persons and addresses named in the order sent to Ardmore, and collect therefor in cash, remitting to the plaintiff. If the cigarettes were not received and paid for, they were shipped back.

Defendant's assistant or agent swore out a search warrant, searched an automobile belonging to the said Mrs. Trammel on the street in Shreveport, and finding some thirty cartons in the car, as well as a few in a brief case, seized them all, including the car; he then proceeded to the home of Lawson and seized other cigarettes in a pasteboard box, which had been received in the manner above described.

Some of the cartons produced in court had no sticker on them, and it is the contention of the defendants that genuine orders were not taken, fictitious names were used, and the cigarettes were shipped for the agents to peddle about the state. However, it was shown, in explanation, that, while there were some cartons without names upon them, they were parts of bundles of two or more which had either been untied or worked loose in some manner after the seizure, and this accounted for the absence of identifying slips on all cartons. Plaintiff called most of the persons whose names appeared upon the order forms, who swore that they had given the orders for the cigarettes as sent in, and would have taken them had they been delivered. There was some confusion as to one or two, but I think on the whole it was not shown that plaintiffs had intentionally shipped in cigarettes, except those intended for persons represented by his agents as having authorized the orders. As suggested by the court during the trial, the opportunity for confusion and inability to tell for whom a particular carton was intended could have been avoided by wrapping them with paper when two or more cartons were to be shipped to a single person, and pasting the name slip on this wrapped bundle; but it seems plaintiff was attempting to economize in the extreme by using the same boxes that came from the manufacturer or jobber for shipping to Lawson in Shreveport, and contended that to use wrapping paper would take up more space and prevent his getting the same number of cartons back in the box as came in it. I am not much impressed with this idea, for it can hardly be assumed that his orders turned out so exactly as his purchases did in every instance, and then there is some difference in the size and shapes of the various brands. This, however, would not affect his legal rights, if the transactions were bona fide; that is, shipments were made only upon such actual orders by customers, although it might subject his agents, if found in possession and delivering cartons of cigarettes upon which no names appeared, to the embarrassment of detention and investigation to determine whether the state law was being violated. Of course, if these agents are caught selling to persons who had not previously given orders to the plaintiff in another state, then I see no reason why they cannot be prosecuted under the state law, and, for this reason, the hands of the state officers should not be tied to the extent of preventing a reasonable opportunity to check up on such matters to determine whether the plaintiff and his representatives

are bootlegging the cigarettes or bona fidely dealing in interstate commerce.

Under the showing made in the present case, the defendant, as I understand it, had nothing upon which to base the seizure, other than the fact that Lawson and Mrs. Trammel were delivering and collecting for the cigarettes, until it was made. To my mind, it makes no difference whether the shipments were made from Ardmore or Fort Worth, the transactions were interstate commerce. The fact that the individual orders were placed in one box and shipped to plaintiff's agent at Shreveport for separation, distribution, and collection of the money did not prevent it from being such commerce, if done upon bona fide orders previously obtained. See Rearick v. Pennsylvania, 203 U. S. 507, 27 S. Ct. 159, 51 L. Ed. 295; Caldwell v. North Carolina, 187 U. S. 622, 23 S. Ct. 229, 47 L. Ed. 336.

My view is that the plaintiff is entitled to a decree enjoining the defendants from attempting to enforce Act No. 4 of the Legislature of Louisiana for the year 1932, in so far as shipments to his agents for delivery upon bona fide orders of customers taken in the manner above described are concerned; except where there is probable cause to believe that they are selling cigarettes or other commodities to persons in this state without first having obtained and sent in to the plaintiff at his place of business in another state bona fide orders for the goods so delivered.

Proper decree should be presented.