OLAN MILLS, INC., a Corporation, Appellant, v. CITY OF CAPE GIRARDEAU, a Municipal Corporation, Respondent, No. 44088—272 S. W. (2d) 244.

Division Two, November 8, 1954.

Hendren & Andrae by Henry Andrae for appellant.

1090

*Finch, Finch & Knehans* by *Jack O. Knehans* for respondent.

**BOHLING, C.**—Olan Mills, Inc., a corporation with its principal place of business in Dallas, Texas, seeks to enjoin the enforcement of certain provisions of a license tax ordinance on photographers of the City of Cape Girardeau, Missouri. The court found the issues for the city and, under stipulation filed by the parties, entered judgment against plaintiff in the amount of $295 for the license fees due the city. The plaintiff (hereinafter designated licensee) has appealed, and contends it is engaged in interstate commerce and the tax infringes the Commerce Clause of the Federal Constitution by discriminating against and casting an undue burden upon photographers engaged in interstate commerce. The city states the only issue is whether the licensee is engaged in interstate commerce.

The ordinance is to the following effect.

Section 1 requires a "transient, itinerant or resident studio photographer" to have a city license; and § 4 authorizes a fine of from $5 to $100 for each day the ordinance is violated.

Section 2 defines the terms. Licensee is an itinerant photographer, which is defined as a person, firm or corporation "who solicits the taking, finishing, coloring, enlarging and sale of photographs for profit" in the city and "who has no studio or other place of business" in the city equipped for the taking and finishing of photographs. Photographers who maintain a studio or place of business for enlarging, coloring or finishing photographs within the city for six months or more in any one year and who in fact carry on said business in the city are "resident studio photographers."

Section 3 exacts a license fee for "itinerant and transient photographers" of $5 per day "for each person so peddling, delivering or soliciting, as aforesaid;" and a license fee for "resident studio photographers" of $20 per annum, and an additional license fee of $5 per annum for each solicitor or salesman of a resident studio photographer.

The licensee is a nonresident of the state and engaged in the business of making portraits, sending its employees from city to city for that purpose. One of licensee's managers, a nonresident of Missouri, and three salesmen came to respondent city and solicited business personally and by locally hired telephone salesgirls. The solicitation continued for six days, when the local employees were released and the permanent salesmen proceeded to another city. The salesmen collected $1.00 from interested customers, issued a receipt therefor, and arranged for a sitting later at a local hotel with licensee's cameraman.

The cameraman, a nonresident, arrived at the appointed time, set up his equipment in the space rented at the hotel, and when a customer appeared he would pose him and take four to eight exposures to get a

good portrait. The customer, according to the contract, paid the cameraman 49 cents, and thereupon was entitled to one unmounted portrait. The cameraman remained for six days.

The exposed films were marked for identification and mailed to licensee's studio in Dallas, Texas, where they were processed, developed, and the proofs made. The customers were then notified when and where they might view the proofs in the city and two salespersons, nonresidents, showed the customer his proofs and attempted to sell him additional portraits. The proof is not the finished portrait. The negative has to be retouched and the finished portrait produced therefrom. The customer's selected proof, together with the order, was mailed to the Dallas office, where the negative was finally processed and finished, and the customer's order mailed directly to him.

All the work of processing the exposed films, developing and finishing them, was done in Dallas, Texas, and none of it in Missouri.

There was evidence that licensee usually made regularly scheduled stops in a city about every fourth month.

Under the stipulation filed, it was agreed that licensee employed 6 telephone solicitors for one day; 3 telephone solicitors for 6 days; 6 sales persons for 5 days; and one cameraman for 5 days. This made a total of 59 man days, and at $5 per day amounted to $295, the amount of the judgment.

Congress is given power: "To regulate commerce * * among the several states * *." U. S. Const., Art. I, § 8, cl. 3.

The United States Supreme Court has considered nonaction by Congress with respect to lawful subjects of commerce to be a declaration that interstate movements of such commodities shall be free, and such commerce can only be free when the commodity is exempted from local discriminating regulations and burdens by reason of its outstate production. Webber v. Virginia, 103 U. S. 344, 351, 26 L. Ed. 565, 567; Scott v. Donald, 165 U. S. 58, 100, 41 L. Ed. 632, 645, 17 S. Ct. 265, 272; Best & Co. v. Maxwell, 311 U. S. 454, 455, n. 3, 85 L. Ed. 275, 61 S. Ct. 334; Opinion of Justices, 211 Mass. 605, 606, 98 N. E. 334, 335[1], 27 Ann. Cas. (1913B) 815, 816; Welton v. Missouri, 91 U. S. 275, 282, 23 L. Ed. 347, 350.

The city contends that the tax is upon a local municipal activity, constituting the original, basic and essential step in the manufacture of the article to be sold (Craig v. Mills, 203 Miss. 692, 33 So. 2d 801, 808[5,6]); and the fact that the negatives of the photographs, after the taking, are sent to another state to be finished does not make the transaction one of interstate commerce (Lucas v. Charlotte, 86 F. 2d 394, 109 A. L. R. 297, 299). State v. Gray, 192 Ark. 105, 96 S. W. 2d 447, and Graves v. State, 258 Ala. 359, 62 So. 2d 446, 450, support the city's position. We think the Craig and Lucas cases, stressed by the city, as well as the Gray and Graves cases, are not in accord with rulings on the instant issue of the courts of last re-

sort of the United States and of the states, and, on analogous issues, of Missouri.

The Lucas case involved license taxes on transient photographers doing business in North Carolina; and, as we read the case, plaintiff's bill to enjoin the collection of the tax was dismissed for want of jurisdiction in the Federal court. The court stated: "We do not think that the fact that the negatives of the photographs, after the taking, are sent away to Minnesota to be finished, makes the transaction one of interstate commerce. The actual work of the photographer is done in the state and the mechanical finishing of the negative does not change the fact that the photographer is carrying on his business in the City of Charlotte and the state of North Carolina."

In the Craig case the court in construing the tax so as to bring it in harmony with the Constitution limited "the liability therefor to the" photographer or cameraman "—the original, basic and essential step in making photographs." 33 So. 2d l.c. 806. The court, following the Lucas case, held this local activity was not "interstate commerce" and could be taxed by the local authorities. Reading the opinion on the instant issue it is to the effect that the interstate commerce connected with the transaction did not occur until after the work of the solicitors or salesmen and photographer had been completed. Id., 808. This is inconsistent with the holding in the Lucas case that sending the negatives out of the state to be finished did not make the commerce interstate. The Lucas and/or Craig cases are criticised in the North Carolina case of State v. Mobley, and the Florida case of Olan Mills, Inc. v. City of Tallahassee, cited infra.

The steps involved in licensee's business from the solicitation to the delivery of the portrait appear to be an integrated interstate transaction. Seizing upon some local incident thereof to circumvent the Commerce Clause without regard to the substantial effects of the tax in unduly burdening interstate commerce, as stated in Nippert v. Richmond, 327 U. S. 416, 423, 66 S. Ct. 586, 90 L. Ed. 760, could subject all interstate commerce to state taxation, and should not be sustained: "For the situation is difficult to think of in which some incident of an interstate transaction taking place within a state could not be segregated by an act of mental gymnastics and made the fulcrum of the tax. All interstate commerce takes place within the confines of the states and necessarily involves 'incidents' occurring within each state through which it passes or with which it is connected in fact. And there is no known limit to the human mind's capacity to carve out from what is an entire or integral economic process particular phases or incidents, label them as 'separate and distinct' or 'local,' and thus achieve its desired result. It has not yet been decided that every state tax bearing upon or affecting commerce becomes valid, if only some conceivably or conveniently separable

'local incident' may be found and made the focus of the tax. This is not to say that the presence of so-called local incidents is irrelevant."

Memphis Steam Laundry Cleaner, Inc. v. Stone, 342 U. S. 389, 393, 96 L. Ed. 436, 72 S. Ct. 424, is in point. The Laundry had its establishment in Memphis, Tennessee, and the issue was whether in engaging in business in certain nearby counties in Mississippi " 'each person soliciting business for a laundry not licensed in this state as such' '' was subject to a license tax of $50 in each of the counties. The court in holding the tax violated the Commerce Clause stated: "Whether or not solicitation of interstate business may be regarded as a local incident of interstate commerce, the Court has not permitted state taxation to carve out this incident from the integral economic process of interstate commerce. As the Court noted last term in a case involving door-to-door solicitation of interstate business, 'Interstate commerce itself knocks on the local door.' If the Mississippi tax is imposed upon the privilege of soliciting interstate business, the tax stands on no better footing than a tax upon the privilege of doing interstate business. A tax so imposed cannot stand under the Commerce Clause." See cases cited at 342 U. S. l.c. 392, n. 7. The United States Supreme Court reversed Stone v. Memphis Steam Laundry Cleaner, Inc., Miss., 53 So. 2d 89, 90[2-4], wherein the Mississippi court applied the reasoning in the Craig case, supra, which stressed the Lucas case, supra, in sustaining the tax.

Brennan v. City of Titusville, 153 U. S. 289, 38 L. Ed. 719, 14 S. Ct. 829, held an ordinance exacting a license on solicitors taking orders for and delivering goods et cetera in the city but exempting persons selling by sample to manufacturers or licensed merchants or dealers residing and doing business in the city violated the Commerce Clause in so far as it applied to the agent of a manufacturer of picture frames and maker of portraits having his place of business in Illinois who exhibited samples and took orders, going when necessary from house to house, from residents of Pennsylvania. Caldwell v. North Carolina, 187 U. S. 622, 47 L. Ed. 336, 23 S. Ct. 229, is to like effect.

The ordinance contains no provision for the supervision or regulation of the licensees. It provides for an occupation tax for revenue purposes. City of Cape Girardeau v. Fred A. Groves Motor Co., 346 Mo. 762, 142 S. W. 2d 1040, 1042[1]; City of St. Charles v. Schulte, 305 Mo. 124, 264 S. W. 654, 655[3,4]. The Schulte case, citing authority, points out that the Missouri constitutional provision requiring taxes to be "uniform upon the same class of subjects" (Mo. Const. 1875, Art. X, § 3; Mo. Const. 1945, Art. X, § 3), applies to occupation license taxes of municipalities and prevents discrimination in such taxes. (See as to the practice of photography being an ordinary legitimate and innocuous occupation, State v. Ballance, 229 N. C. 764, 51 S. E. 2d 731, 735[9,10], 7 A. L. R. 2d 407, 413[10,11], and Annotation l.c. 417, § 2.)

In Nafziger Baking Co. v. City of Salisbury, 329 Mo. 1014, 48 S. W. 2d 563, plaintiff operated bakeries in the State of Missouri and wholesaled its products daily to retailers in other cities, including Salisbury, Missouri, and sought to enjoin the ▮▮▮ collection of a license fee of $2 a day, or $30 a month, or $125 for six months, or $200 for a year exacted of those selling and delivering merchandise within said city but not selling at their regularly established place of business. Another ordinance provided for a license fee of $1.50 to $7.50 a year on various merchants of the city, bakeries being taxed at $4 per year. The questioned ordinance was held to impose a protective tariff for the benefit of the local bakeries and invalid because it discriminated between nonresidents and residents engaged in the same occupation.

In Fetter v. City of Richmond, 346 Mo. 431, 142 S. W. 2d 6, 8, and City of Washington v. Reed, 229 Mo. App. 1195, 70 S. W. 2d 121, 123 [2,5], similar ordinance license taxes were considered so high as to be confiscatory and prohibitive. See also St. Louis v. Consolidated Coal Co., 113 Mo. 83, 20 S. W. 699; Ex parte Beckenstein, Mo. App., 104 S. W. 2d 404; California v. Riback, Mo., 204 S. W. 389. Other municipalities of the State may impose a like tax if the instant license be sustained and those subject to the tax and engaged in interstate commerce may find such muncipal licenses not only burdensome but prohibitive. Nippert v. Richmond, 327 U. S. 416, 428, n. 19 et seq., 90 L. Ed. 760, 66 S. Ct. 586, 162 A. L. R. 844; McGoldrick v. Berwind-White Coal Min. Co., 309 U. S. 33, 56, n. 11, 84 L. Ed. 565, 60 S. Ct. 388, 128 A. L. R. 876; Railway Express Agency v. Virginia, 347 U. S. 359, 98 L. Ed.——, 74 S. Ct. 558, 563[7].

The different fixed-sum licenses imposed by the instant ordinance upon nonresident and resident photographers disclose an inherent discrimination contravening the Commerce Clause. Brennan v. City of Titusville, 153 U. S. 289, 38 L. Ed. 719, 14 S. Ct. 829 ($1.50 for one day, $5 for one week, $10 for three months, $25 for one year); Caldwell v. North Carolina, 187 U. S. 622, 47 L. Ed. 336, 23 S. Ct. 229; Asher v. Texas, 128 U. S. 29, 32 L. Ed. 368, 9 S. Ct. 1; Nafziger Baking Co. v. City of Salisbury, and City of Washington v. Reed, supra. Other cases involving photographers and in accord are: McGriff v. State, 212 Ark. 98, 204 S. W. 2d 885, 887[3] (reaching a different result than State v. Gray, supra, cited by the city); Nicholson v. Forrest City, 216 Ark. 808, 228 S. W. 2d 53, 54[2,3]; Olan Mills, Inc. v. City of Tallahassee, Fla., 43 So. 2d 521, 525; Graves v. City of Gainesville, 78 Ga. App. 186, 51 S. E. 2d 58, 61[2-4]; Cordell v. Commonwealth, Ky., 254 S. W. 2d 484, 485; Warren Kay Vantine Studio, Inc. v. City of Portsmouth, 95 N. H. 171, 59 A. 2d 475, 476[1]; State v. Mobley, 234 N. C. 55, 66 S. E. 2d 12, 16; 20[8-10] (see cases cited l.c. 15); State v. Ballance, 229 N. C. 764, 51 S. E. 2d 731, 7 A. L. R. 2d 407; Bossert v. City of Okmulgee, Okla., 260 P. 2d 429, 435[10-15]; Olan

1096

Mills, Inc. v. City of Sharon, 371 Pa. 609, 92 A. 2d 222, 223[1-3] ; Ex parte Holman, 36 Tex. Cr. 255, 36 S. W. 441.

The decree below is reversed and the record remanded for the entry of an appropriate order granting the injunction. *Westhues* and *Barrett, CC.*, concur.

PER CURIAM :—The foregoing opinion by BOHLING, C., is adopted as the opinion of the court. *Leedy*, Acting P. J., dubitante ; *Ellison, J., Bennick* and *Broaddus*, Special Judges, concur.