CITY OF WASHINGTON, APPELLANT, v. EARL B. REED, JOHN C. RIDLEY, RESPONDENTS.—70 S. W. (2d) 121.

St. Louis Court of Appeals. Opinion filed April 3, 1934.

*Herbert A. Krog* for appellant.

*Boyle & Priest, George T. Priest, Robert E. Moloney, Jesse H. Schaper* and *Randolph H. Schaper* for respondents.

*Lynn H. Latta* of counsel.

HOSTETTER, P. J.—This action was begun in the police court of the City of Washington in Franklin County, Missouri, on June 11, 1930. The complaint filed in the police court by the city attorney charged the defendants with violating an ordinance by selling goods, wares and merchandise by going about from place to place in the city without first obtaining a peddler's license as provided by ordinance.

Washington is a city of the third class and has the statutory authority and power to levy and collect a license tax and regulate divers and sundry businesses and persons engaged in divers and sundry businesses, among others "peddlers." [Section 6840, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., Vol. 8, p. 5639).]

The proceedings in the police court resulted in a fine against both defendants and they appealed to the circuit court where the cause was heard anew on August 21, 1931, resulting in a discharge of both defendants on the ground that the ordinance under which defendants were being prosecuted was unreasonable as a matter of law and from this decision the city has brought the case to this court by appeal for review.

The facts are as follows: The defendants were engaged in selling a certain electric appliance known as Air-Way Cleaners, called by some of the witnesses "sweepers." They conducted their business in an automobile in which they would go from place to place in the city of Washington, exhibit their appliance to the housewife and make a demonstration of it, and several sales were shown in the testimony. The appliance sold for $79 if paid in installments or $71 if paid in cash. When sales were made they delivered the article at once out of their stock carried in the automobile.

The ordinance of the city provided for a license tax of $4 per day on peddlers. A peddler was defined, under the ordinance offered in evidence, as follows:

"Peddler.—A peddler is any person who shall deal in the selling of patents, patent rights or other medicines, lightning rods, goods, wares or merchandise, except pianos, organs, sewing machines, books, charts, maps and stationery, agricultural and horticultural products, including milk, butter, eggs and cheese, by going about from place to place to sell the same.."

Most of the businesses on which license taxes were imposed as disclosed by the ordinance read in evidence, were treated on a per annum basis, instead of a *per diem* basis.

Subsequent to the alleged violation of the ordinance the defendants took out a license for $10 whereby they were permitted to sell for a year electric light fixtures as supply merchants, which would have permitted them to sell the same appliances which they had been arrested for selling as peddlers.

As to most of the more than 100 businesses and persons engaged therein, subject to the license tax imposed by the city, the amount fixed by the ordinance ranged from $5 to $25 per annum.

A dry goods merchant was charged $10 per annum; a druggist $25 per annum; a bank $75 per annum; ice cream manufacturer $20 per annum; hotel keeper $20 per annum; loan agent $10 per annum; newspaper office $10 per annum; corn cob pipe manufacturer $30 per annum; sewing machine agent or dealer $10 per annum; restaurant keeper $10 per annum; shooting gallery $10 per annum; traveling and auction store $50 per annum; undertaker $20 per annum; carnival and street fairs $15 per day; grocer $10 per annum; feather renovator $5 per annum; gents furnishing merchant $10 per annum; hardware and stove merchant $10 per annum; harness and saddlery merchant $10 per annum; a hawker, which is one form of a peddler, $4 per days; boot and shoe merchant $15 per annum; a soft drink stand or saloon $75 per annum; second hand merchant $20 per annum; shoe cobbler $5 per annum; skating rink $4 per month; tinner $10 per annum; carriage or cab driver $5 per annum; lunch counter $5 per annum; insurance company $5 per annum; handle manufacturer $5 per annum; auctioneer $5 per annum; bakery $15 per annum; and barber $10 per annum. Prior to June 27, 1920, the date of the enactment of the amended ordinance under which the defendants were prosecuted, the license tax on peddlers was only $2 per day.

The sole question determinative of this case is whether or not that portion of the ordinance fixing the license tax on peddlers at $4 per day is valid. The learned counsel for appellant insists that it is a valid ordinance, and frankly bases his argument on the proposition that the peddler comes in direct competition with the home merchants, who bear the brunt of local taxes, and that it would not be fair to permit the transient dealer who peddles his wares from place

to place without having established himself in the city as a permanent business man to thus "compete with the local merchant without paying for the privilege."

He also admits that calculating the rate fixed on peddlers ($4 per day) for an appreciable length of time, as for 313 working days, it would be out of line with other rates imposed by the city, but he avers that the peddler is usually a transient.

On the contrary, the counsel for respondents assert that the ordinance in question is void because the excessive rate prescribed on peddlers' license makes it prohibitory.

While it is true that the occupation of peddler is usually regarded as a lowly occupation, but it cannot be seriously contended that there is anything immoral or hurtful in the business of peddling goods, wares and merchandise. Peddlers and hawkers are synonymous terms. The hawker is defined as a peddler who uses a beast of burden to carry his wares around and cries out the merits of his wares in the street, whereas, the peddler is usually thought of as a man with "a pack on his back" going from place to place, exhibiting his wares for sale and immediate delivery.

In Great Britain during the reign of Queen Victoria, a hawkers' law was enacted merely for excise purposes, wherein the hawker was distinguished from the peddler merely by the use of his beast of burden or other artificial means of locomotion or of transportation of himself or his goods from place to place.

It will be noted that in the ordinance under investigation the hawker and the peddler were each required to pay the same amount of license tax. This further manifests the idea that the ordinance under consideration in so far as it related to hawkers and peddlers was designed to prohibit the carrying on of either vocation within the city, on account of the argument advanced by counsel for the city that it was an unfair competition by transients with local merchants. So that, this argument contains, in our opinion, a practical admission that the purpose of the ordinance was to prohibit the plying of the trade of a peddler or a hawker. And, by reason of such manifest purpose it necessitates our holding, along with the trial court, that the ordinance in that respect is invalid.

We are of the opinion that the fixing of the license tax on peddlers at $4 per day when compared with the license tax fixed on other businesses and other persons, shows such an excessive amount levied against peddlers as to violate the provisions of the Missouri Constitution, Section 3, Article 10, in respect to uniformity. Where the purpose of exercising the taxing power is to raise revenue it must be uniform. [St. Louis v. Spiegal, 75 Mo. 145; St. Louis v. Spiegal, 90 Mo. 587, 2 S. W. 839; St. Louis v. Baskowitz, 273 Mo. 543, 201 S. W. 870.]

While it is the recognized rule that the discretion of the municipal law making body will not be interfered with by the courts unless it is clearly apparent that there has been an abuse of discretion and that the tax fixed by the municipal law making body is arbitrary, unreasonable, oppressive or prohibitive, it is also the general rule that if the license tax is fixed so high as to be virtually confiscatory or prohibitive of legitimate occupation or privilege, an ordinance imposing it may be held invalid.

Particularly is this rule recognized as to all businesses and occupations and privileges which are not in their general effect injurious or offensive to the public welfare and are not hurtful to public morals. As to such businesses or occupations, the general trend of authorities is that municipal authorities have not the power or right to fix the license tax at such high figure as to prohibit the pursuit of such businesses or occupations and when it appears to the reasonable mind that the license tax has been fixed at such a figure as to result in practical prohibition of such business the power and authority of the courts to hold such license fee invalid is unquestioned.

A very well considered case, wherein the excessive license tax imposed on peddlers was held to be unreasonable, and the ordinance fixing the same, invalid, is the case of Iowa City v. Glassman, 155 Iowa, 671, 40 L. R. A. (N. S.) 852.

In that case the ordinance imposed on peddlers a license fee of $5 per day, or $350 per year. It was contended by counsel for the city that the discretion of the municipal law making body could not be interfered with by the courts. The court, however, overruled this contention and said:

"It is undoubtedly true that the ordinances of a municipality when passed by legislative authority are to be given great force and effect, but they are not sacred, by any means; it is equally as true when general power is given a municipality it must be exercised in a reasonable manner, and when not so exercised it is the duty of the courts to protect those who may suffer thereby."

The court held that the tax imposed by the ordinance was unreasonable and on that account the ordinance in that respect was void.

In the instant case, the article that was being sold by the defendants was of very substantial value and, according to the testimony, the persons who bought the article claimed to be highly pleased with its workings. It is barely possible that persons handling similar articles of such substantial value might be able to operate under the $4 a day license tax, but it is extremely doubtful and clearly peddlers undertaking to sell smaller articles of nominal value, such as pins, buttons, shoe strings, neckties, toys, ornaments, pencils, knives, or articles of their own handicraft, would be absolutely deterred by

reason of the high license fee fixed from attempting to ply their business in the City of Washington.

Even if the license tax was being imposed for revenue only, it would fail in its purpose because of the doubtful result which would follow an attempt to operate under the ordinance. The ordinance in respect to the license fee fixed on peddlers clearly shows that its aim and intent was to prevent competition with city merchants and, of course, that competition could not be throttled except by fixing the tax so high that it would discourage anyone from paying the tax in order to carry on any competitive business.

The raising of the tax from $2 per day, which it formerly was, to $4 per day, in the ordinance under which defendants were arrested, is significant of the purpose in the mind of the lawmakers of the municipality, which was to make it impossible for peddlers to ply their trade inside the city.

The reasonable protection of local merchants by the lawmaking body of a city is not to be condemned because it is a natural and laudable emotion in the breasts of the members of the law making body to protect their own citizens from competition from abroad.

But the ordinance in question being practically prohibitive would prevent other citizens of the City of Washington from engaging in the business of peddling in their own city, if they were so inclined, as well as citizens residing elsewhere.

In Nafziger Baking Co. v. City of Salisbury, 329 Mo. 1014, 48 S. W. (2d) 563, the court condemned an ordinance as invalid which unduly discriminated in the amount of license tax exacted in favor of local merchants and against nonresident sellers of the same character of goods handled by the local merchants.

It must be kept in mind that the City of Washington has not the power and authority to prohibit "peddling" within its limits. It has only the power conferred on it by statute "to levy and collect a license tax" and "regulate" peddlers. [Section 6840, Revised Statutes of Missouri, 1929 (Mo. Stat. Ann., Vol. 8, p. 5639).] It cannot do indirectly what it may not do directly. [37 Corpus Juris, p. 192, Sec. 42.]

In State v. Johnson (Mo. App.), 211 S. W. 682, the court held that a license to operate a poolroom could not be refused an applicant who was of good moral character and had complied with all the other requirements of the statutes simply because it was opposed by many people on the ground that a poolroom was regarded by them as a nuisance and not helpful to the community and tended to promote idleness, etc.

Having reached the conclusion that the imposition of $4 per day license tax on peddlers is unreasonable and practically prohibitory

we hold that the ordinance in that particular is invalid and that the trial court was justified in discharging the defendants.

It is therefore ordered that the judgment and finding of the trial court be, and the same is, hereby affirmed. *Becker* and *McCullen, JJ.,* concur.