CLARENCE FETTER v. CITY OF RICHMOND, a Municipal Corporation; CARL HAYNES, Mayor; CHARLENE BAKER, City Collector; and CHARLES ARMOUR, City Marshal, Appellants.—142 S. W. (2d) 6.

Division Two, July 3, 1940.

*A. S. Penniston* for appellants.

*Frazor T. Edmonson* and *Lawson & Hale* for respondent.

WESTHUES, C.—Respondent Fetter filed this suit in the Circuit Court of Ray County, Missouri, to enjoin the city of Richmond and its officers from enforcing a license ordinance which imposed a license fee of $5 per day, $50 per month and $100 per year on peddlers. Respondent in his petition asserted that the ordinance violated the fourteenth amendment of the United States Constitution; section 30 of article 2, and also section 3 of article 10 of the State Constitution.

The trial court granted the relief prayed for. The defendants appealed. A constitutional question being involved vests this court with appellate jurisdiction.

Respondent contends that the ordinance was unreasonable, discriminatory, confiscatory and prohibitive, and therefore in violation of the constitutional provisions above mentioned. Appellants in their brief described the respondent's business as follows:

"The agreed statement of facts, and the evidence show: That Plaintiff was regularly engaged in the business of selling breads and other bakery products at retail in Richmond, Missouri; that these products are bought by plaintiff's from the Manor Baking Company, of Kansas City, Missouri, and are delivered to him fresh daily; that upon receipt of same, plaintiff loads his delivery equipment and proceeds to sell and deliver said bread and bakery goods over a regularly established route in the City of Richmond which he covers every day of each week except Sunday; that plaintiff's method of doing business is as follows to-wit: That he will call at substantially the same group of houses every day attracting the attention of the occupant by a whistle or by his knock, that when he approaches the front door he carries a basket or other container loaded with various items from his stock, that he then and there offers said items for sale to said housewife at retail and if the housewife or occupant decides to make a purchase the item is delivered to her from the basket and her payment taken or credit given at the same time. That some of the places at which plaintiff calls make daily purchases, others. make only occasional purchases. That plaintiff may add to or strike off some of the stops he makes as he may deem it necessary to the best interest of his business. That stops are made regardless of whether there is a request for the stop or not.

"Plaintiff's route books introduced in evidence as Defendants' exhibits A, B, and C, show, according to the summary of the same, agreed on by council, the volume of Plaintiff's business and the percentage of his business that was on actual order; these route books also indicate that Plaintiff was actually engaged in the business for more than a year, and Plaintiff's deposition indicated that the business had been carried on in same manner for several years."

The ordinance in question was a general license ordinance imposing a license tax on the various occupations carried on within the city. It was conceded to be a revenue measure. The following is an illustration of the amounts imposed on other occupations as compared with peddlers: Coffee and tea dealers and agents per year $20; bakeries, retail or wholesale, per year $10; ice peddlers per year $10; merchants per year $10; hawkers per day $25, per year $250; bread wagons and trucks not having a place of business within the city of Richmond, per year $50. The mayor of the city testified that the ordinance was passed for the purpose of protecting local merchants. That in itself would not invalidate the ordinance if it were in fact not discriminatory or prohibitive. A similar ordinance was before the St. Louis Court of Appeals in the case of City of Washington v. Reed, 70 S. W. (2d) 121. In that case the court held an ordinance invalid which imposed a tax of $4 per day on peddlers. The court held that the tax of $4, when compared with the license tax on other businesses, showed such an excessive amount as to violate the provision of the Missouri Constitution, section 3, article 10, in respect to uniformity. The court also held the ordinance prohibitive and therefore void. In that case a peddler of Airway Cleaners was arrested for failure to obtain a license. The court in the course of the opinion said:

"In the instant case, the article that was being sold by the defendants was of very substantial value, and, according to the testimony, the persons who bought the article claimed to be highly pleased with its workings. It is barely possible that persons handling similar articles of such substantial value might be able to operate under the $4 a day license tax, but it is extremely doubtful, and clearly peddlers undertaking to sell smaller articles of nominal value, such as pins, buttons, shoe strings, neckties, toys, ornaments, pencils, knives, or articles of their own handicraft, would be absolutely deterred by reason of the high license fee fixed from attempting to ply their business in the city of Washington."

In the case before us, a tax of $100 per year would certainly be a heavy burden on the business of peddling bread and similar products. Richmond has a population of between 4,000 and 5,000. The city of Washington has a population of about 6,000. If the ruling of the Court of Appeals in the Washington case is correct, then the ordinance here in question must be declared void because it is prohibitive. As pointed out by the Court of Appeals, a city cannot do indirectly what it cannot do directly. And since a city cannot prohibit peddling it has no power to levy a prohibitive tax on that occupation. This is supported by numerous authorities. In 37 C. J., page 192, section 42, the rule is thus stated:

"In accordance with general rules as to prohibitory legislation, in regard to licenses, if a license fee or tax is so high as to be virtually confiscatory or prohibitive of a useful and legitimate occu-

pation or privilege, or to create a monopoly for the benefit of a few, the act or ordinance imposing it is invalid; and this rule applies where the tax is imposed for revenue.'' [See also Great Atl. & Pac. Tea Co. et al. v. Board of Comrs. of City of Camden, 122 N. J. L. 47, 4 Atl. (2d) 16; Dugan Bros. v. Zorn, 145 Misc. 611, 261 N. Y. Supp. 592; State v. Brown, 188 Atl. 713, 135 Me. 36; Haller Baking Co. v. Borough of Rochester, 118 Pa. Super. 501, 180 Atl. 108; Shannon v. Hughes & Co., 270 Ky. 530, 109 S. W. (2d) 1174; Ex parte Mihlfread (Tex. Cr.), 83 S. W. (2d) 347; National Linen Service Corp. v. Mayor, etc. (Ga.), 179 S. E. 837; Speier's Laundry Co. v. City of Wilber (Neb.), 269 N. W. 119.]

The mayor of the city testified as follows:

''Q. And you feel like the local merchants have their money invested here in town and have their buildings and that the city council ought to levy a license fee high enough against the outsiders that might want to peddle, to keep them out and protect your local merchants? A. That's right.''

The amount of the tax levied on plaintiff's business, as compared with other occupations, supports the mayor's evidence. The above cases rule that such an ordinance is void.

Appellants do cite some cases from other States which tend to support their contention that the amount of the tax is not excessive. These cases will be found in the annotations beginning at page 1385 of 39 A. L. R. The size of the city has a bearing on the question, and when reading the cases that must be kept in mind. The statutes must also be consulted with reference to the power granted to a city. For example, appellants cite the case of O'Hara v. Collier, 173 Mich. 611, which sustained a tax of $4 per day and $100 per year on peddlers. The city, however, in addition to having authority to regulate and tax the occupation also had the power to prohibit peddling. A city, under our statute, has the power to make reasonable classifications of the various occupations. There is no doubt that peddlers, hawkers, etc., may be charged a greater sum than merchants having a regular place of business who pay an *ad valorem* tax in addition to the license tax. The city also has the right to regulate the business of peddling, and reasonable regulatory conditions may be imposed. The ordinance in question did not attempt to regulate the business. It was purely a revenue measure. It is apparent that the effect of the ordinance was to stifle or prohibit peddling. The mayor testified that that was its purpose. When that is the main purpose the ordinance is void, as said in the annotations of 39 A. L. R., pages 1385 and 1386:

''And an authorization to impose fees for the purposes of revenue will not warrant the exaction of prohibitory fees.'' We need not pass on the question of whether the city authorities properly classified plaintiff as a peddler.

For the reason stated the judgment of the trial court is affirmed. *Cooley* and *Bohling, CC.*, concur.

PER CURIAM:—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.