**THUNDER OIL COMPANY, a Corporation, Respondent,**

v.

**CITY OF SUNSET HILLS, Violet Wohlschlaeger, Alwal Moore, and Al Kitun, Appellants.**

No. 47975.

Supreme Court of Missouri,

In Banc.

July 10, 1961.

Rehearing Denied Sept. 11, 1961.

Robert C. Jones, Harold S. Cook, Cook, Murphy, Lance & English, St. Louis, for appellants.

Robert Grant Walsh, William H. Corcoran, Richard J. Brown, Walsh, Hamilton & Corcoran, St. Louis, for respondent.

Carroll J. Donohue, Shulamith Simon, Myron Gollub, Husch, Eppenberger, Donohue, Elson & Jones, St. Louis, for City of Olivette, amicus curiae.

F. William Human, Jr., Ziercher, Tzinberg, Human & Michenfelder, Clayton, for St. Louis County League of Municipalities, amicus curiae.

EAGER, Judge.

In this suit plaintiff seeks to restrain the enforcement of an ordinance and to have it declared void. We shall refer to the parties as they appeared below. Defendant Sunset Hills is a city of the fourth class in St. Louis County. Plaintiff operates a filling station at an important junction of highways within the city limits as, in fact, it did prior to the City's incorporation in June 1957. The individual defendants are officials of the City and have no personal interest in the matter. The defendant City (and we refer to it when "defendant" is used in the singular) has a population of approximately 3,000, and is the fifth largest of the county's 97 municipalities. By ordinance enacted on July 16, 1957, and amended on August 14, 1957, defendant required a license of every person who stored for sale or engaged in the business of selling any "motor fuel," including gasoline; it further required monthly reports, fees computed at the rate of one cent per gallon of fuel sold, and the keeping of records; the city clerk and gasoline inspector were authorized to investigate all such records, and a failure to make the reports and pay the fee was declared a misdemeanor, punishable by a fine upon conviction, each day of failure or refusal to constitute a separate offense. The ordinance required that application for the license be made to the city clerk and it also required a compliance with all city ordinances, rules and regulations pertaining to health, welfare, safety and morals.

The parties stipulated such facts as they deemed pertinent. Among these are the following: that, in addition to the general Merchant's Tax Ordinance, the city had enacted ordinances levying license taxes on water service (5% of gross receipts), telephone service (5%), gas service (5%), manufacturers ($25–$250 per year), dealers in nonintoxicating beer ($22.50–$375 per year), restaurants ($25 a year), the sale of intoxicating liquor by the drink ($450 per year), package liquor ($50 per year), pack-

age beer ($22.50 per year), operators of swimming pools ($50 per year), and the erection of outdoor signs ($2–$15, plus 50% additional for annual inspection). The general "merchant's" license tax ordinance, as amended, prescribed a fee of $1 per $1,000 of gross annual sales, and another ordinance fixed flat license fees of from $2 to $250 per year on sundry listed occupations and businesses not considered to be "merchants." Fines for violations were provided in all the licensing ordinances. Plaintiff was prosecuted and fined the sum of $100 and costs in the Police Court for its refusal to obtain the license and make the required reports; from this, it appealed. So far as is shown, the appeal is still pending.

The assessed valuation of real estate in the city for 1958 (the last year available) was $5,620,710, and that of personal property was $1,060,670; the tax rate of twenty-five cents per one hundred dollar valuation produced a return of $16,703.45. The property valuations for 1959 were expected to increase about 25%, with an expected return of about $25,000. The estimated city revenues for · 1959 (total $118,000) included the following: merchants' licenses, $15,500; liquor licenses, $3,300; building fees and permits, $4,200; police court fines, $2,600; utility license fees, $19,000; county road refund, $8,000, and gasoline license fees, $36,937. The city had a surplus of $24,082.82 at the end of 1958; it anticipated an additional surplus of $50,465 for the year 1959 with the gasoline license fees, or $14,716 without them.

There are fourteen gasoline service stations in Sunset Hills; plaintiff has by far the greatest sales volume, it being a so-called "cut rate" station. It estimated its sales for one year ending September 30, 1957, at 1,293,762 gallons of gasoline or a total dollar volume of $400,000, including oil and greases. On this volume its gallonage tax would have been $12,937.62; on the basis of the General Merchants' Tax it obviously would have paid $400. The total estimated gasoline license tax for 1959 from the fourteen stations was $36,937. It was stipulated that the ordinance is "primarily and principally a revenue measure." Other cities and villages of St. Louis County have levied gasoline license taxes, as follows: one at one and one-half cents per gallon; thirty-four at one cent per gallon (including several of the larger communities); twelve at one-half cent per gallon; and thirty-eight with none. The City of St. Louis levies a one cent gasoline license tax.

Upon these facts plaintiff insists that this enactment constitutes an attempt to tax gasoline as a commodity, which defendant may not do, and that it is a subterfuge; that the ordinance is unreasonable, unjust, discriminatory and oppressive, and that it constitutes an abuse of the taxing power and is wholly void. Plaintiff further points out: that there is no "need" for this revenue in the light of the stipulated income and surplus of defendant, and that the share of taxes thus exacted from the filling stations (and from plaintiff particularly) is vastly out of proportion to the fees charged merchants generally; that the total estimated gasoline tax for 1959 was more than one half of the total estimated operating expense of the City. A point is also made concerning the fines provided for; this will be discussed later. The trial court held that the ordinance in question did not actually contemplate any regulation but only revenue, that the revenue therefrom was not needed by the City, that defendant was thus attempting to tax gasoline as a commodity without authority, and that the ordinance was unreasonable, discriminatory, oppressive and void. It entered a decree accordingly. Plaintiff pleaded certain specific constitutional questions, including claimed violations of the requirements of due process, uniformity of taxation, and equal protection, the Missouri Constitutional provisions (Art. 4, Sec. 30, V.A.M.S.) concerning the application of revenue derived from highway users, and the prohibition against the imposition of excessive fines. It has argued certain of

these here. We have determined that we have jurisdiction under Art. 5, Sec. 3, Mo. Constitution, although the distinctions between constitutional constructions and mere applications are troublesome here, as indeed they generally are.

Plaintiff takes the position that this case presents a new question. We think not, the differences from prior adjudications being matters of degree only. In our discussion we shall combine various points and arguments made separately in the briefs; to do otherwise would unduly lengthen this opinion.

 It is clear that defendant had authority to impose a license tax on filling stations. A municipal corporation has no power to levy such a tax except when the power has been granted to it by the State, but the grant may be either by statute or in a special charter. Automobile Club of Missouri v. City of St. Louis, Mo., 334 S.W.2d 355, 362; Siemens v. Shreeve, 317 Mo. 736, 296 S.W. 415; City of Lamar v. Adams, 90 Mo.App. 35. Since this defendant is not a charter city, the authority must come from the statutes. Section 71.610 [1] requires that the business or avocation to be so taxed shall be "specially named as taxable," in the charter or statute. No doubt exists here on that requirement, for § 94.270, applicable to cities of the fourth class, specifically lists "gasoline filling stations" among the businesses upon which license taxes may be levied and collected.

Plaintiff's first substantive argument is that the imposition of this license fee constituted an attempt to tax gasoline as a commodity, such being beyond the powers of the city, and that defendant's action is, in fact, a subterfuge. Following up the point, it argues that the tax was admittedly one imposed "primarily and principally" as a revenue measure, and that actually the fee is a sales tax on gasoline enacted with the intention that it be paid by the purchaser; also, that no real intent of regulation or inspection was indicated. On the latter point, we note that the ordinance, as amended, contains provisions which require compliance with all ordinances, rules and regulations pertaining to health, welfare, safety and morals. This would certainly permit of some regulation, though it is said that similar provisions are not contained in any other licensing ordinance.

 In Ploch v. City of St. Louis, 345 Mo. 1069, 138 S.W.2d 1020, a city excise tax of one dollar per thousand on cigarettes was upheld; the court held that the City might, if it wished, single out cigarettes for a special license tax, and that the levy thus imposed was not a tax upon the sale or upon the property sold, but was merely an occupation tax. We fail to see that the purchase of stamps by the dealer there and the affixing of these to the packages prior to the sale, makes any difference in the applicability of the case, as plaintiff claims here. In Edmonds v. City of St. Louis, 348 Mo. 1063, 156 S.W.2d 619, a flat license tax on coin-operated cigarette machines was upheld as a privilege tax, although clearly a revenue measure as distinguished from a police regulation. In Food Center of St. Louis, Inc. v. Village of Warson Woods and City of Rock Hill, Mo., 277 S.W.2d 573, loc. cit. 578, the court said: " 'The subject matter of a business or occupation tax, however, is not the sale, even though sales of the character specified are utilized as a measure of the tax to be assessed, * * * It is on the privilege or occupation, that is, on the person for the privilege of engaging in the business or occupation designated, * * *.' " As long ago as 1924 this court upheld a Kansas City gasoline license tax of one cent a gallon. Viquesney v. Kansas City, 305 Mo. 488, 266 S.W. 700, 702, Banc. The court held that this was merely an excise tax, and not a tax on the property; also, that a license tax might be imposed "strictly as a revenue measure in the exercise of the taxing power." And, further, that the tax did not violate the constitutional re-

<hr>

[1]. All statutory references are to RSMo 1959 and V.A.M.S. unless otherwise stated.

quirement of uniformity. The taxpayer claimed there, as here, that he should merely have been taxed as a "merchant." In City of Lamar v. Adams, 90 Mo.App. 35, it was held that a licensing ordinance levied on insurance agents and companies was not an infringement upon the state premium tax. In part, the court said, loc. cit. 42–43: "They do not authorize double but different methods of taxation. The exaction of a license tax for the privilege of carrying on an occupation or pursuit is quite a different thing from a tax on the annual income or premiums received from that business. The distinction is plain. Both may be properly taxed. * * * We can not, therefore, agree to the contention that the power conferred by the plaintiff's charter is as to foreign insurance companies a police power only. The terms of the grant, it seems to us, are such as to confer both the power to regulate and to tax, and that the ordinance, the validity of which defendant calls in question, was within the power and must be upheld." In Springfield City Water Co. v. City of Springfield, 353 Mo. 445, 182 S.W.2d 613, the court pointedly held that an ordinance imposing a 5% tax on the gross receipts of the water company was not invalid because, in effect, a duplication of the state sales tax upon such gross receipts, and that it was not a tax upon the "gross sales." Referring to Ploch, supra, the court said, in part, 182 S.W.2d loc. cit. 619: "In Ploch v. City of St. Louis, 345 Mo. 1069, 1077(3), 138 S.W.2d 1020, 1024(8), decided in 1940, this court en banc held that the state sales tax is not the same as a municipal license or occupation tax payable by the seller, and does not foreclose the right of municipalities to levy such taxes." Plaintiff cites Moots v. City of Trenton, 358 Mo. 273, 214 S.W.2d 31, and Shively v. City of Keytesville, 241 Mo.App. 239, 238 S.W.2d 682. In Moots, the court merely held that the tax was unauthorized because the operation or avocation taxed was not "specifically named" in the statute, as required of a license for revenue. In Shively, the ordinance was held invalid because the city there earmark-

ed the funds for the building of a city hall, wholly without authority. We are not persuaded that this ordinance may be invalidated as a sales tax or a tax upon a commodity; were that true, substantially every municipal gasoline tax in Missouri would be invalid. They have long been upheld as excise or occupation taxes, although admittedly enacted for revenue.

█ Next, plaintiff insists that the ordinance is unreasonable, discriminatory and void. This contention is based primarily upon the proportion of the total revenue which plaintiff (and to a lesser extent the other filling stations) is required to contribute. The first question which occurs to us is whether or not the courts may declare an ordinance invalid for unreasonableness in the absence of some constitutional violation. Our courts have stated at various times, however, that they may so review an ordinance. See, among other cases: City of Washington v. Reed, 229 Mo.App. 1195, 70 S.W.2d 121; Fetter v. City of Richmond, 346 Mo. 431, 142 S.W.2d 6; City of Springfield v. Jacobs, 101 Mo.App. 339, 73 S.W. 1097; Holland Furnace Co. v. City of Chaffee, Mo.App., 279 S.W.2d 63; City of Monett v. Campbell, Mo.App., 204 S.W. 32; Union Cemetery Ass'n v. Kansas City, 252 Mo. 466, 161 S.W. 261; Ozier v. City of Sheldon, Mo.App., 218 S.W.2d 133; A. B. C. Liquidators, Inc. v. Kansas City, Mo., 322 S.W.2d 876. We conclude from an examination of the cases, however, that it is only where the enactment of the ordinance constitutes an abuse of the taxing power that the courts should declare it invalid, absent any constitutional invalidity. We will refer to some of the cases later.

█ Even apart from the specific authorization of § 94.270, supra, for the taxing of gasoline stations, the city has the undoubted power (within certain limits) to classify occupations and treat them separately. Village of Beverly Hills v. Schulter, 344 Mo. 1098, 130 S.W.2d 532; Automobile Gasoline Co. v. City of St. Louis, 326 Mo. 435, 32 S.W.2d 281; Springfield City Water -

Co. v. City of Springfield, 353 Mo. 445, 182 S.W.2d 613; City of St. Charles ex rel. Palmer v. Schulte, 305 Mo. 124, 264 S.W. 654. The imposition of such a license tax has been held not to be a violation of the constitutional requirement of uniformity (Art. 10, Sec. 3, Mo.) so long as it operates equally upon all in the same class of subjects. Viquesney v. Kansas City, 305 Mo. 488, 266 S.W. 700, 703, Banc; Village of Beverly Hills v. Schulter, 344 Mo. 1098, 130 S.W.2d 532, 535; General American Life Insurance Co. v. Bates, 363 Mo. 143, 249 S. W.2d 458, 462; Glasgow v. Rowse, 43 Mo. 479; City of St. Louis v. Sternberg, 69 Mo. 289; Bacon v. Ranson, 331 Mo. 985, 56 S.W. 2d 786; City of St. Charles ex rel. Palmer v. Schulte, 305 Mo. 124, 264 S.W. 654. This controversy really boils down to a single question, namely: does the *amount* of the gasoline license tax on plaintiff and others, when compared with the total revenue and expenses of the city, render it so unreasonable and arbitrary as to constitute an abuse of the taxing power? We have determined that it does not. Viewed alone, the amount of plaintiff's tax is somewhat startling, but this is due primarily to the fortuitous location of plaintiff's station, to the fact that it is a "cut-rate" operator, and to the fact that for these reasons it sells more than one-third of all the gasoline sold in the city. The power of a city to tax does not necessarily depend upon the precise results of the tax, when levied. We pose these questions: Would a tax of one-half cent a gallon be equally obnoxious? Or, if plaintiff should voluntarily go out of business, would the levy of approximately $24,000 annually on the remaining thirteen filling stations under the present ordinance still be obnoxious? These questions merely illustrate the difficulties and confusion which arise when the courts step into the legislative field, under the asserted power to declare an ordinance unreasonable. We are not concerned with the expediency and wisdom of the ordinance, but with the power to enact and enforce it. City of St. Louis v. United Railways Co. of St. Louis, 263 Mo. 387, 174 S.

W. 78; Kroger Grocery & Baking Co. v. City of St. Louis, 341 Mo. 62, 106 S.W.2d 435, 111 A.L.R. 589. The legislative body of a city has a broad discretion in the imposition of excise taxes. We have recognized this in many cases. City of St. Louis v. United Railways Co. of St. Louis, 263 Mo. 387, 174 S.W. 78; Glasgow v. Rowse, 43 Mo. 479; City of St. Charles ex rel. Palmer v. Schulte, 305 Mo. 124, 264 S.W. 654; Kroger Grocery & Baking Co. v. City of St. Louis, 341 Mo. 62, 106 S.W.2d 435, 111 A.L.R. 589; Ludlow-Saylor Wire Co. v. Wollbrinck, 275 Mo. 339, 205 S.W. 196. See also: Fox v. Standard Oil Co. of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780; Walters v. City of St. Louis, 347 U.S. 231, 74 S.Ct. 505, 98 L.Ed. 660. In Fox, supra, the court said, 294 U.S. loc. cit. 99, 55 S.Ct. loc. cit. 338: "When the power to tax exists, the extent of the burden is a matter for the discretion of the lawmakers."

We have been cited to no case which holds that the *amount* of the levy upon a complaining taxpayer is, in itself, a sufficient ground for declaring a license tax so unreasonable as to be invalid, unless it is found to be confiscatory of a legitimate business. The contrary is indicated in: Village of Beverly Hills v. Schulter, 344 Mo. 1098, 130 S.W.2d 532 (collection of $486.13 from one filling station, with an indicated total "requisite annual revenue" for the city of $2,000); Fox v. Standard Oil Co. of New Jersey, 294 U.S. 87, 55 S.Ct. 333, 79 L.Ed. 780 (collection of 84% of the revenue from a West Virginia chain store tax from gasoline stations and 42.16% from Standard Oil alone); City of St. Charles ex rel. Palmer v. Schulte, 305 Mo. 124, 264 S.W. 654 (additional tax of $175 on annual sales volume of $1,800 in sale of near beer); Magnano Co. v. Hamilton, 292 U.S. 40, 54 S.Ct. 599, 78 L.Ed. 1109 (tax of 15 cents per pound on oleo); Campbell Baking Co. v. City of Harrisonville, 8 Cir., 50 F.2d 670 (annual tax of $200 on sales of $8,000 of bakery goods; and generally, Union Electric Co. v. City of St. Charles, 352 Mo. 1194, 181 S.W.2d 526, 528, 529(6, 7). It will be

impossible to discuss individually all the cases cited by plaintiff. In City of Washington v. Reed, 229 Mo.App. 1195, 70 S.W. 2d 121, Fetter v. City of Richmond, 346 Mo. 431, 142 S.W.2d 6, and City of Springfield v. Jacobs, 101 Mo.App. 339, 73 S.W. 1097, the opinions proceeded upon the theory that the taxation imposed upon itinerant businesses because they had no locale in the city amounted to a suppression or confiscation of those legitimate businesses. These cases fall into the class of the so-called "peddler" ordinances and cases. As said in Reed, supra (70 S.W.2d 121, loc. cit. 123): "While it is the recognized rule that the discretion of the municipal lawmaking body will not be interfered with by the courts unless it is clearly apparent that there has been an abuse of discretion and that the tax fixed by the municipal lawmaking body is arbitrary, unreasonable, oppressive, or prohibitive, it is also the general rule that, if the license tax is fixed so high as to be virtually confiscatory or prohibitive of legitimate occupation or privilege, an ordinance imposing it may be held invalid." No one may successfully claim here that this one cent a gallon tax would *confiscate or suppress* plaintiff's business. His counsel have argued strenuously that the tax is a "lug" on the motorists, recognizing that plaintiff will pass it on to them if it is upheld. The tax may reduce plaintiff's competitive advantage by that much, but that certainly is not decisive.

In Union Cemetery Ass'n v. Kansas City, 252 Mo. 466, 161 S.W. 261, cited by plaintiff, an ordinance prohibiting further burials in a downtown cemetery with vacant land remaining was, in reality, held to be an abuse of the City's legislative discretion because the court found that the ordinance was not enacted as a health or welfare measure (though purporting to be a police measure), but solely to benefit land speculators and others; in referring to the action as "tyrannical" the court essentially found fraud. In Schwabe v. Moore, 187 Mo.App. 74, 172 S.W. 1157, 1160, also cited by plaintiff, the court said in part: "Where there is no fraud, the acts of the city's legislative body are conclusive upon the courts, not only in collateral, but also in direct, proceedings; it is only in 'those cases where the municipal act is so unreasonable, oppressive, and subversive of the rights of the citizen in the general purpose declared, as to clearly indicate and leave but one inference, that of an attempted abuse rather than the legitimate use of a power enjoyed,' that the courts will interfere." Ozier v. City of Sheldon, Mo.App., 218 S.W.2d 133, and State ex rel. Musser v. Birch, 186 Mo. 205, 85 S.W. 361, also cited, were annexation cases where, from long precedent, it has been recognized that the reasonableness of the annexing ordinance may be reviewed, but with a presumption of regularity and with the tests well laid out. State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S. W. 1007. We are not impressed with the argument that this ordinance does not contemplate any real regulation or inspection. As we have already pointed out, excise taxes may be levied for regulation, or revenue, or both. Nor do we think it material that this tax has been levied upon garages and perhaps other sellers of gasoline, as well as upon filling stations. Plaintiff operates only a filling station, and defendant has been specifically authorized to levy an excise tax upon that business. See, generally, Union Electric Co. v. City of St. Charles, 352 Mo. 1194, 181 S.W.2d 526, 528(4). Plaintiff has shown no other similar tax upon his business which might constitute a double taxation.

We have concluded that a declaration that this ordinance is illegal and void for unreasonableness would be an unwarranted interference with the legislative prerogative. Such a holding would necessarily rest upon the mere fact that plaintiff was required to pay too great a proportion of the city's revenue. The situation may well change, almost overnight. We cannot foresee the city's needs in the future; we cannot forecast plaintiff's future business. If we should hold that the present ordinance was void, solely because of its impact on plain-

tiff and the other filling stations, how much could defendant properly levy? And, how much could it levy two, four, six years from now, when its general revenues and needs had changed? Such questions, as previously suggested, demonstrate the almost impossible situation confronting a court when it is asked to declare a tax invalid merely because of its pecuniary impact, presently and in the future. We are not here to fix standards of reasonableness; that is not our business. We have decided that defendant had the power to enact the ordinance, and that its enactment and enforcement did not constitute an abuse of discretion.

One point remains; plaintiff also claims an invalidity because the ordinance, being a revenue measure, provides fines for violations with possible imprisonment, which, as counsel say, would thus constitute "imprisonment for debt." However, Art. I, Sec. 11, Mo.Constitution, prohibiting imprisonment for debt, expressly excepts "nonpayment of fines and penalties." We are cited to City of St. Louis v. Green, 1879, 7 Mo.App. 468, as holding that a licensing ordinance, enacted for revenue, may not be enforced by fine and imprisonment. That decision was reversed on this specific point as shown in 70 Mo. 562. See also, Ex parte Hollwedell, 74 Mo. 395; City of St. Louis v. Sternberg, 69 Mo. 289; State ex rel. George v. Dix, 159 Mo.App. 573, 141 S.W. 445. In Hollwedell, supra, the court said, 74 Mo. loc. cit. 400: "While there cannot be any imprisonment for debt in this State, imprisonment for the nonpayment of a fine duly imposed is fully authorized. * * * In one sense it may be said that every fine imposed for a violation either of a law of the State or the ordinance of a municipal corporation, recovered either in a criminal proceeding by the State, or in a civil proceeding quasi criminal, in the name of the corporation, is a debt against the party upon whom it is imposed and who is adjudged to pay it; still it is, nevertheless, a debt for a fine, for the non-payment of which the party against whom it is adjudged may be imprisoned. The power of

the city of St. Louis to enforce its ordinances and to recover fines for infraction of them in a proceeding by the city in its own name, was upheld in the case of the City of St. Louis v. Sternberg, 69 Mo. 289, and cases there cited." In Sternberg, supra, a St. Louis license tax on lawyers was apparently regarded by the court as a revenue measure. There the court said in part, 69 Mo. 303–304: "It matters not whether the ordinance assailed was passed as a police regulation or otherwise. The question is one of power, and whether the provision of the charter authorizing the passage of such an ordinance was in conflict with either the constitution or laws of the State." Section 79.470 authorizes cities of the fourth class to prescribe fines for the enforcement of all ordinances enacted for any of the purposes mentioned in that chapter, which, of course, include the general powers mentioned in Section 79.110. The enforcement of city ordinances by fines, even with the present provision that each day of refusal or failure shall constitute a separate offense, has become an almost universal practice. However, § 79.470 only authorizes a maximum fine of $100 unless the city adjoins a city of 500,000 inhabitants, or more. We take judicial notice of the fact that Sunset Hills does not adjoin the City of St. Louis. This ordinance provides (Sec. 6) a fine of from $10 to $500 for failure to make a report, as required, and a fine of from $50 to $500 (Sec. 7) for refusing to pay the license after notice. The maximum in each such section exceeds the City's statutory power. We find the penalty provisions invalid, but separable from the body of the ordinance. By this we do not mean that the provision for a minimum fine is valid and that for the maximum invalid; penalty provisions should be validly enacted in their entirety. The remainder of the ordinance, including the provisions for the imposition of the license fee, is valid.

The judgment is reversed with directions to enter a judgment in accordance with the views herein expressed.

All concur.